Jack C. Massengale v. Commissioner.
Massengale v. Comm'r
Docket No. 3846-65.
United States Tax Court
T.C. Memo 1968-64; 1968 Tax Ct. Memo LEXIS 233; 27 T.C.M. (CCH) 346; T.C.M. (RIA) 68064; April 16, 1968. Filed *233 Jack C. Massengale, pro se, Route 2, Athens, Tenn. Sommers T. Brown and Donald Geerhart, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax and additions under section 6653(b) for fraud as follows: Year
Deficiency
Sec. 6653(b)
1961
$ 3,442.84
$ 1,721.42
1962
21,721.70
10,860.85
Findings of Fact The petitioner filed his individual income tax returns and amended returns for the tax years with the director of internal revenue for the district of Cincinnati, Ohio. His place of business during 1961 and 1962 was at 123 East Sixth Street, Cincinnati, Ohio 45202. That was his address last known to the Commissioner on April 15, 1965, when the Commissioner timely mailed the notice of deficiency to the petitioner at that address. The petitioner received an LL.B. degree from the Simon T. Chase Law School of the Cincinnati Y.M.C.A. in 1953 and thereafter engaged at times in the practice of law in Cincinnati. He was also engaged during the tax years in detective and guard business which he carried on under various names for those businesses. Eugene and Dovado Massengale *234 were the petitioner's parents and Mary Ann was his daughter. He claimed the three of them on his 1961 and 1962 returns as dependents. Dovado died on June 15, 1962. The petitioner did not keep a set of books during 1961 and 1962 which reflected accurately the income and expenses of the businesses which he conducted. The petitioner frequently in the course of his business activities signed another person's name to deeds or instruments and in some cases acknowledged the signing before a notary as if he were that other person. The person whose name he used either knew nothing about the misuse or, in two deeds, knew that misstatements were intentionally made in the document as if made by him. The petitioner also occasionally obtained permission from some associate to use that person's name as a principal party in a transaction in which that person was in no way involved. The record is clear that the petitioner had made such misrepresentations without disclosing any authority for his acts to those with whom he was dealing. He also sometimes misrepresented facts to those with whom he was dealing. The petitioner opened a number of bank accounts in names other than his own and used those *235 accounts as his own for his own purposes. The Commissioner in determining the deficiencies used total bank deposits of $31,745.32 for 1961 and $61,121.29 for 1962 and deducted from those amounts business expenses of $18,579.96 for 1961 and $34,553.23 for 1962. The petitioner's initial return for the year 1961 reported total taxable business income from self employment as a detective of $50 and total long-term capital gain from payment received on a land contract of $5,334, resulting in total taxable income of $2,717 ($50 plus $2,667). No Schedule C or D was filed with the return, and nothing else was filed therewith to support and explain the characterization and computation of the foregoing figures. 347 The petitioner filed an amended return for the year 1961 on a short Form 1040A with a schedule of income and expenses attached thereto. The date appearing beside the petitioner's signature thereon indicates that it was signed on May 28, 1963. It was stamped on the schedule as having been received in the district director's office on May 31, 1963. The schedule attached to the petitioner's amended return for 1961 showed gross incomes from sources identified only as "Operations, *236 " "Windham," and "Cleves" totaling $4,169.70; a list of business expense deductions such as office rents, advertising and telephone totaling $5,953.71; and a resulting loss of $1,784.01. It also showed an unidentified capital gain of $9,000, $4,500 of which was treated as taxable income, resulting in the amount of $2,715.99 ($4,500 - $1,784.01) which was shown as taxable income. The return showed no income tax withheld from wages, and showed the tax due to be $4. The petitioner's individual return for the year 1962 consisted of an undated short Form 1040A with a schedule attached. The schedule showed unidentified income of $4,527.67, business expense deductions of $3,604.13, and a resulting net profit of $923.54. It also showed a capital gain of $4,000, of which $2,000 was added to the aforesaid $923.54 to produce a taxable income of $2,923.54. He showed no tax withheld on wages, and showed a tax due of $44. Frank Ottle's wife was a sister of the petitioner's mother. The petitioner purchased several pieces of real estate in the name of Frank Ottle during the years 1961 and 1962. Ottle knew that the petitioner was buying real estate in his name, but he did not know the specific *237 pieces that were bought. Frank Ottle never has received any money from the sale of properties titled in his name by the petitioner with the exception of the sale of the Mt. Washington property. The petitioner purchased on June 28, 1962 a property called herein the Conroy Street property. The purchase was made in Ottle's name. The purchase price was $3,625. A foreclosure deed to the property from the Sheriff of Hamilton County, Ohio was executed on July 27, 1962 and recorded on September 4, 1962. The purchase price was paid from funds in accounts in Frank Ottle's name in the Fifth Third Trust Co. and the Southern Ohio National Bank. That property was conveyed to David Froehlich by deed stating to be Frank Ottle, "unmarried[,]" executed on August 20, 1962 and recorded on September 4, 1962. That deed was not signed by Frank Ottle but instead the petitioner signed Frank Ottle's name thereto. Another deed showing Frank Ottle, "unmarried," as grantor and David Froehlich as grantee, was recorded on October 15, 1962. It included a statement that it was to correct an error in the prior deed. Frank Ottle did not sign that deed but instead the petitioner signed Frank Ottle's name thereto *238 and he also signed his own name to it as a witness to its execution. The documentary stamps on the deed indicated that the purchase price was $9,000. Frank Ottle did not receive any of the proceeds from the sale of that property. The Commissioner in determining the deficiency included $5,375 in the petitioner's income as short-term capital gain from the sale of that property. The petitioner acquired in 1946 a property on Salem Road in Mt. Washington, in or near Cincinnati. The petitioner and Margaret Massengale executed a deed to that property on January 1, 1960 naming Frank Ottle as grantee. Frank Ottle and Evelyn, his wife, conveyed the Mt. Washington property on June 12, 1962 to Daisy Donut Corporation for $37,000. The cash proceeds of the sale to Daisy Donut of $26,797.64 were deposited in the account in the name of Frank Ottle in Southern Ohio National Bank. Twenty-three thousand dollars was then transferred on June 21, 1962 to savings account No. X8276 in the name of Frank Ottle in the Fifth Third Union Trust Co. on which the petitioner had power to draw under a power of attorney and from which he drew from June 28, 1962 to December 24, 1962, $22,894.40. The petitioner also *239 withdrew from that account $5,000 on August 7, 1962, $1,000 on August 20, 1962 and $1,000 on August 28, 1962 and paid that $7,000 to Stanley Sallee for use in Hi-Grade Import-Export Co. The Commissioner, in determining the deficiency for 1962, added to the petitioner's income for 1962, $13,195.20 representing onehalf of a long-term capital gain of $26,390.40 from the sale of the Mt. Washington property. There was no land contract and no transfer of funds between Frank Ottle and petitioner relating to the Mt. Washington property. Frank Ottle never received any rental income from the Salem Road property in Mt. Washington, although it was rented for at least a part of the time that the title was in his name. He never paid the taxes. 348 There was received for recording and recorded in the Deed Books of Hamilton County, Ohio at Book No. 3227, pages 639 and 640, on July 5, 1962 a document containing affidavits dated June 7, 1962 by Frank Ottle and Evelyn Ottle to the effects that they were then, and had been for more than 15 years, husband and wife, and that Frank Ottle never had been married to Minnie Reed Schmidt. Those affidavits were given in relation to the title status *240 of the Salem Road property, and the document states on its face that it was prepared by the petitioner. Ottle believed those affidavits to be false when he signed them because he had been married to Minnie before his marriage to Evelyn. He swore thereto at the suggestion of the petitioner. The petitioner, when receiving cash upon the conversion of cashier's checks into cash in connection with withdrawals from the account in the name of Frank Ottle at the Fifth Third Union Trust Co. during the year 1962, always signed the receipt for the cash in the name of Frank Ottle rather than in his own name. The petitioner received in each of the years 1961 and in 1962 total taxable income substantially in excess of the amount he reported for that year. A part of the deficiency for each year is due to fraud with intent to evade tax. Opinion MURDOCK, Judge: Rule 7 of the Court's Rules of Practice requires that the issues be fully stated in the petition which shall contain clear and concise assignments of each error allegedly committed by the Commissioner in the determination of the deficiency. It shall include any fraud issue (even though the Commissioner has the burden of proof). The rule *241 also requires that facts upon which the petitioner relies to sustain his assignments of error, on which he has the burden of proof, shall be clearly and concisely stated. The petitioner, in the document which he filed as a "Petition," has made no assignment of any error in the determination of the Commissioner as set forth and explained in the notice of deficiency. He did not state in that document any facts upon which he relies and he did not attach a copy of the notice of deficiency, as required by Rule 7. Those defects were never corrected. The petitioner has the burden of proof to show that the Commissioner erred in determining one or both of the deficiencies. No issues or facts upon which the petitioner relies have been pleaded. The Commissioner has pleaded, in accordance with the Rules of the Court, to raise the issue of fraud for each year. He has the burden of proof on those issues. The Commissioner, in determining the deficiency for 1961, allowed a standard deduction of $1,000 and reduced income by $2,667 representing profit reported on a sale of real estate which "did not occur during that year." Those adjustments for 1961 were not contested during the trial. The two *242 other adjustments, one disallowing exemptions claimed for three "dependents" and the other, including in income additional profit of $13,115.36 from business, were the subject of some testimony. The Commissioner, in determining the deficiency for 1962, allowed the $1,000 standard deduction and disallowed three exemptions claimed for "dependents." He added $16,570.20 to income, based upon a net short-term capital gain of $5,375 on the sale of a property at 508 Conroy Street and a long-term capital gain of $26,390.40, less 1/2 of the latter and $2,000 reported on the return. He also added to reported income $25,644.52, representing additional income from business, and $2,467, representing net income from the business of exporting lumber. Evidence was introduced at the trial with respect to all of the above 1962 adjustments except the standard deduction. The Commissioner has conceded in his brief that the $2,467, representing 1962 income from exporting lumber, should be reduced to $1,017.36 and that $2,996.50 should be eliminated from 1962 income since it was merely a transfer from an account in one bank to one in another bank. The petitioner complains about the address to which *243 the deficiency notice was mailed. His returns for 1961 and 1962 were filed with the district director of internal revenue in Cincinnati, Ohio. The first one showed an address in Norwood, Ohio, while the latter two gave an address in Cincinnati. It was stated in the "Petition" that, "Petitioner is a resident of Route 2, Athens, Tennessee." However, the Court attempted to serve a copy of the Commissioner's answer on the petitioner by mailing it to him at that address and that piece of mail was returned to the Court stamped "Addressee Unknown." The petitioner since then has refused to disclose where he resides. When questioned at the trial by government counsel and the 349 Court, he never gave his address and finally replied, "I believe I can invoke the Fifth Amendment to the Constitution." The notice of deficiency in this case was mailed on April 15, 1965 to Jack Massengale, 123 East Sixth Street, Cincinnati, Ohio 45202. That is the address at which the petitioner carried on his business during 1961 and 1962 and later. It was the address of the petitioner last known to the Commissioner on April 15, 1965 when the deficiency notice was mailed. It was stated in that notice that the *244 deficiencies determined therein would be assessed within 90 days if, within that time, the recipient did not file a petition with this Court in accordance with its rules, a copy of which could be obtained by writing its Clerk, Box 70, Washington, D. C. 20044. A "Petition" was filed with this Court on July 1, 1965 captioned "Jack C. Massengale, Petitioner vs. Commissioner of Internal Revenue" and indicating that it was signed and sworn to by "Jack Massengale." The filing of the "Petition" within that 90-day period and statements in the "Petition" indicate that the petitioner had received the deficiency notice. He has shown no basis for complaint as to the Commissioner's use of the 123 E. Sixth Street address. The "Petition" contains numerous denials but no assignments of error, no statements of facts, and no copy of the notice of deficiency, as required by Rule 7 of the Rules of Practice of the Court. The petitioner's pleadings contain no assignment of error which would place in issue the question of whether the deficiencies determined by the Commissioner were in any way erroneous. This, if properly raised, would have been an issue on which the petitioner, under the law, would have *245 had the burden of proof. Not only was no such issue properly raised but the petitioner has failed to plead any facts or introduce any evidence which would prove that either deficiency was erroneously determined by the Commissioner. The petitioner subpoenaed no witnesses but called two of the respondent's witnesses and himself. The petitioner claimed four exemptions for 1961 and 1962, one for himself and three for "dependents," his father, Eugene, his mother, Dovado, and his daughter, Mary Ann. The record does not show the total cost of the support of any one of the three or how much, if any, of the total cost of any one of the three was paid by the petitioner. There is no evidence of any cost or payment of any kind in money. There is evidence that Eugene and Dovado each received substantial amounts for services performed in connection with the businesses carried on at 123 East Sixth Street. Dovado died on June 15, 1962. Eugene answered "Yes" to the leading question from the petitioner, "Did Jack Massengale during the years 1961 and 1962 contribute more than one-half of the support of yourself?" He also answered "Yes" to similar questions in regard to Dovado and Mary Ann. Counsel *246 for the Commissioner objected to those questions and the Court advised the petitioner that he should prove each person's total support costs and the petitioner's contributions in sufficient detail to show whether the petitioner paid enough to claim the persons as dependents. The advice was disregarded. The record contains no further reference to the daughter. The Commissioner allowed the petitioner an exemption for himself and disallowed those claimed for the three relatives. There is a failure of proof to show that the Commissioner erred in those disallowances. The Commissioner in determining income, in addition to that reported, from the business carried on at 123 East Sixth Street, started with the total deposits in several bank accounts for each tax year, he subtracted amounts to represent expenses paid in each year and subtracted also the income from business reported on the returns, $50 for 1961 and $923.54 for 1962. This action resulted in the determination of additional income of $13,115.56 for 1961 and $25,644.52 for 1962. There is no evidence to show any error in the amount of expenses allowed by the Commissioner, $18,579.96 for 1961 and $34,553.23 for 1962. The petitioner *247 contends that Federal Detective Bureau, Inc. was a corporation and the monies in the Federal Detective Agency accounts did not belong to him and do not affect his income. He also contends that the Lakes Detective Agency belonged to Beechum Lakes and monies in its accounts did not belong to the petitioner or affect his income. All of the business carried on at the 123 East Sixth Street office of the petitioner was his business and he was in charge of it during 1961 and 1962. Federal Detective Bureau, Inc. carried on no business as a corporation and as such had no income or expenses. Expenses of the petitioner's business were paid from whatever bank account had a credit balance available regardless of whether the account was in 350 the Lakes name or the Federal name. The evidence definitely does not shown that the money in those accounts did not belong to the petitioner or that it belonged to any other. It was income of the petitioner. Frank Ottle's wife was a sister of the petitioner's mother and the record as to the business relationship between Ottle and the petitioner is in some respects confusing. Ottle apparently gave the petitioner a general power of attorney, time and purpose *248 not very clear, which was in effect during 1961 and 1962. Ottle worked for a bakery and was never engaged in the detective or guard business carried on by the petitioner at 123 East Sixth Street. He apparently loaned some money to the petitioner shortly after World War II, at undisclosed dates and in undisclosed amounts, to help him get started in earning a living. The record does not show the use made of the money by the petitioner. The petitioner claims that he bought some properties for Ottle at sheriffs' sales but Ottle was not aware of some of them and the petitioner signed and acknowledged deeds in Ottle's name without disclosing in the deeds that he was not Ottle or that he was acting under a power of attorney for Ottle. It is clear that the petitioner was the operator of the businesses which were carried on during 1961 and 1962 at the 123 East Sixth Street office involved herein and that he was the sole owner of any profits realized from those businesses during 1961 and 1962. It is also clear that the bank accounts in the names of Lakes Detective Agency, Federal Detective Agency and others were used solely for the benefit of the petitioner as was the Berea bank account in *249 his name. The record is not as clear as it might be in regard to the Frank Ottle accounts and Ottle's interest in the Export-Import lumber business. Ottle did not know that there was an account in his name at the Southern Ohio National Bank in Cincinnati. The only Ottle bank account that Ottle knew of was an account at the Berea Bank and Trust Company in Kentucky. The petitioner used the Ottle accounts for his own benefit. There is a failure of proof to show that the Commissioner erred in including deposits in and withdrawals from the Ottle Southern Ohio National Bank account in computing income of the petitioner or that he erred in determining the petitioner's income from the detective and guard businesses. The petitioner had at least a one-fourth interest in any 1962 profits of the lumber business. The petitioner has not shown by a fair preponderance of the evidence that he did not realize income of $1,017.36 in 1962 from the lumber business, and, consequently, the Commissioner's determination as to that item must stand. The petitioner has not shown that the Commissioner erred by including in 1962 income $5,375 as short-term capital gain from the sale of the Conroy Street property *250 or by including in 1962 income of the petitioner $13,195.20 as 50 percent of the longterm capital gain from the sale of the Mt. Washington property. The Commissioner has proven by clear and convincing evidence that at least a substantial part of the deficiency for each year is due to fraud with intent to evade tax. The petitioner's use of bank accounts and names in his business, the lack of proper records and the confusion in those kept, his failure to disclose and admit the sources of his income, and his efforts to disguise transactions are sufficient in themselves to prove his intent to defraud and to evade income tax of these years due from him. Decision will be entered under Rule 50.